And call our second and last case of this morning. Maliandi v. Montclair State University, No. 14-3812. Ms. McGruthin and Mr., how do you pronounce it? DiCiara. DiCiara. Di, go ahead, one more time. DiCiara. DiCiara, okay, thank you. Whenever you're ready, counsel. And there's no hurry. Take your time. Good morning. May it please the court, I'd like to reserve three minutes for rebuttal. That's fine. Thank you. I'll give you a name for the record only. Yes, Jennifer McGrother, Deputy Attorney General on behalf of the appellant, Montclair State University. This circuit's precedent, which is supported by the law of other circuits, shows that the autonomy factor and the status under state law factor both weigh heavily in favor of Montclair State University's sovereign immunity. So essentially with these cases, just looking at life from 10,000 feet, they're very fact-intensive in terms of how the university is funded, if there were a judgment against it, what's its status considered to be under state law, how does the state treat it, and then ultimately how much autonomy does it actually have in fact. And you're suggesting, contrary to Judge Schessler, that the second and third factors go significantly in favor of Montclair, is that correct? Yes, Your Honor, that's correct. And why so? It's institution-specific. I think in this case the relationship between Montclair State University and the state of New Jersey is sufficiently set forth in statutes and judicial decisions and executive actions to demonstrate that its status under state law favors immunity and it's subject to sufficient control. Can we look first at the state law decisions? Because the New Jersey Supreme Court's decision in Futilla is surprisingly absent from the government's brief in opening or reply, and it seems to suggest that, at least in the view of the New Jersey Supreme Court, that New Jersey state colleges are autonomous, at least for purposes of some categories of claims. Yes, Your Honor. Futilla, first I want to point out that it addresses the University of Medicine and Dentistry of New Jersey, which was organized under a separate statute. It exercised much more autonomy than Montclair State University. It had the statutory right to sue and be sued, for example. Its board was structured differently. And so I think that's a separate category and in its own category apart from Montclair State University. And while state colleges are allowed flexibility and a certain level of self-governance and control with respect to academic freedoms and those necessary, you know, the ability to operate itself and run itself is essential in the higher education structure. Let's just compare this with Futilla. Futilla was a discrimination claim. Yes. And it was cited, not disprovingly, but cited in the bank case that we had a year later in Fishick. What was the percentage of funding in Futilla? I'm sorry, Your Honor. I don't know the exact percentage. It was, what, 18.7 or something like that? Roughly. 18.9. Was it significant in Futilla or insignificant? Do we know? I don't know. We don't know. I don't think the funding, the amount of funding is relevant to the analysis. It's not determinative. This Court has held with respect to the funding factor that, and at that time, I want to note the funding factor predominated, and as this Court recognized. Well, one could still make an argument it predominates. Fishick said that funding is predominant, and then our case in 2005 in Ben said, well, they're all the same because Ben looked at a Supreme Court case called Doe that read it that way. One year later in Fabray, we said that, well, based on another Supreme Court case called Hess, that, yeah, you look at all three, but if things go in different directions, funding takes predominance, and Bowers reaffirmed that. So essentially, use my words, funding is still first among equals if you have things going in opposite directions. Right, and that's a big if. Here we have two factors pointing in favor of immunity, and so there's not indicators pointing in both directions as the courts have felt. No. I mean, let's put it this way. Funding could point in favor of not having immunity. Eighteen percent could be that. I mean, for example, let's just say that the second and third factors, the status and the autonomy, in a given case clearly in favor of the entity being an alter ego or arm of the state, and yet it got zero funding. How would that case come out? I think that would come out exactly like Ben because that is the situation in Ben. It was locally funded, and the state would not be on the hook for any judgment against Ben, and so the court there said, you know, this is an interesting factor. It's relevant. It's probative. It is not determinative, and because the first judicial department is clearly under state law, its status is that of an agency, a state agency, and it's subject to sufficient state control. It's entitled to immunity, notwithstanding the absolute lack of state funding. So you're saying, in effect, it isn't so much a balancing of the three? I mean, what's the purpose of 11th Amendment immunity? The purpose is to respect the dignity of the state and permit every state, in this case New Jersey, to structure itself as it thinks appropriate to be as efficient as possible and as effective as possible. And isn't there also a second purpose, at least as stated by the cases? Is the state going to be on the hook legally liable for a possible judgment against the entity? That is a secondary purpose. Someone said that's a primary purpose, so there may be two purposes here. Clearly a respect for federal-state relations, but also is the state liable for something that has entered a judgment against the entity that it claims should have immunity? Right, practically or legally liable. I think legal liability is a sufficient condition to find that that factor weighs in favor of immunity. However, it's not necessary. So I apologize, I pronounced it Febreze. I think you pronounced the case Febreze. I know you were on it, Febreze. In that case, the court left the door open to practical consequences. Who knows? That's how I pronounced it 10 years ago. I could be wrong. Do we take it from your opening argument that you're abandoning the position that the indirect effect on the state treasury here would satisfy the funding factor? No, Your Honor, I'm not abandoning that. I do recognize that it is the weakest factor for Montclair State in this analysis, but I do think we meet the test. There are practical consequences. The state did not specifically insulate itself from liability as it has done with Rutgers, which this Court noted in Kovats v. Rutgers. How is the indirect effect argument that you're making any different than the one that we have rejected repeatedly? In Kovats, in Febreze, in Bowers, how do you distinguish it from the indirect effect argument made in those cases? In this case, the court hasn't, excuse me, the state hasn't expressly insulated itself from liability. So there is potentially the practical consequence that if Montclair were to have a judgment entered against it that would be debilitating, the state may, you know, could come to the rescue. It's not, it may ultimately be on the hook for that. And with respect to the Tort Claims Act and the Contractual Liability Act, the state has taken responsibility because Montclair State University is part of the state under both of those statutes. I'd like to ask you about those in a moment. But just going back to Fuchilla for a moment, that may have involved another college. But Fuchilla was addressed again in New Jersey Educational Facilities Authority, which dealt with Montclair. Right. And that seemed to reaffirm the position of Fuchilla that at least for purposes of things like a discrimination claim, that Montclair, like other state colleges, would not be considered an arm of the state. That is, hasn't the New Jersey Supreme Court taken the view that these colleges will be an arm of the state or autonomous depending on the nature of the claim? I don't think they've taken that position so strongly depending on the nature of the claim. I think the New Jersey Supreme Court recognizes that state colleges are state agencies with different elements than, for example, the Department of Education, that they do have certain self-governance. And so in different circumstances, they may be treated differently. But in some circumstances, they may be treated as state agencies. And in some circumstances, they may not under New Jersey case law. And they are entitled to sovereign immunity. I think it's the Educational Facilities Authority case versus Gruzin Partnership, which entitles Montclair State University to sovereign immunity for purposes of the Nullum Temporis Doctrine, which essentially tolls the statute of limitations indefinitely for the state. And it determined that Montclair State University is the state and therefore was not subject to any statute of limitations. But at the same time acknowledging that it may be subject to liability, as under FUCHILA, for a different type of claim, right? Right. I don't think those cases, those analyses affect this case and this analysis. So let's look at the statute itself, and particularly the Tort Claims Act, which points you as evidence of this is not a sue-and-be-sued entity. It appears that under the Tort Claims Act, the decision whether to be a sue-and-be-sued entity is left with the institution itself, where the opening sentence of Section 3B6H says that the board has the power and duty to retain legal counsel of the institution's choosing, and then goes on to say it can opt to be represented by the Attorney General or it can opt not to, in which case it is a sue-and-be-sued entity for purposes of the Tort Claims Act. Right. Solely for purposes of the Tort Claims Act. What I think is important about that statute is that the state gave that option to the colleges. If they weren't part of the state, it would not have given them that option to be represented by the Attorney General's office. And so Montclair State, all of the state colleges opted in, and so I'm here representing them, but they wouldn't have had that option if they weren't a state agency. That's not something that's given to school districts or counties or, you know, municipalities. That's a purely state, you know, an indicator of a purely state status. Five more minutes. Let me ask you, does the college or Montclair State University, does it own its own land? It owns land. Yes, it's considered state property. It's immune from taxation. It's immune from local zoning ordinances. So although it can buy and sell real estate, it is for all intents and purposes state property. And who makes that decision if it wants to buy some contiguous property next door? I'm sorry? Who makes the decision? Does it make it on its own? Does it have to get approval of the Secretary of State or somebody? It can make that decision on its own. Who holds title? I believe the university holds title. Does it own any patents? Not that I'm aware of. I don't know. And its assets or its investment assets are invested with the state treasurer? It manages its own investments. It has the option of getting. So it manages its own investments? Right. Similar with the Tort Claims Act, this option would not have been made available to the college if it were not an arm of the state. So doesn't that make it look like the university is pretty autonomous in terms of the decisions that it makes? It is autonomous in terms of the decisions it makes with respect to how to run its university. However, the governor appoints the entire board of directors. They can only be removed for cause once that's done. That's right. And that's exactly the situation in the University of Iowa. The trustees were appointed for six-year terms and could only be removed for cause. And that's the same situation in New Jersey. And in Bowers v. NCAA, this court held that that was an extremely strong indicator of state control. Well, the fact that the governor is appointing all of the members may be an indicator of arm of the state. But the six-year term for cause, the very reason for doing that is to give independence to those board members. They can't be removed except for cause. And I think that responds to the flexibility that a higher education institution requires to be successful and nationally competitive. And as I mentioned, that was the situation in Bowers, which did not counsel against immunity. To the contrary, it counseled in favor of immunity. So I think in this case it also counsels in favor of immunity. You've represented that Montclair has opted in under the Short Claims Act, that it has opted out in terms of running its own investments, that it holds title itself to its land. Where can we find those things? I'm friend with the 12B1. There's going to be a limited record. But is there anything we can even take judicial notice of as to the decisions that have actually been made by the college here? I'm sorry. Meaning those types of records, like the public, the deeds, and that type of stuff? I'm not sure I understand your question. Well, it's the state's burden to show us that we don't have jurisdiction, the 11th Amendment applies. What in the record reflects that the college has opted to be represented by the Attorney General for purposes of tort claims? You've told us that's the case. What reflects that that we could take judicial notice of? I don't know, but I imagine that there is. I'm certain that there is a record of the college opting in back when the statute passed, and I could certainly locate that documentation and provide it to the court if that would be helpful. In terms of the sue and be sued status, just looking on Westlaw, it appears that Montclair filed suit against Oracle in 2012 in Montclair State University versus Oracle in New Jersey District Court. It hired Givens to represent it as its private counsel in bringing that suit for fraudulent inducement, negligent misrepresentation, and breach of contract claims. How is that consistent with the entity not having power to sue or be sued? Well, certainly in practice it can sue and be sued, otherwise I wouldn't be standing here today defending Montclair State University in this lawsuit. But that phrase, sue and be sued, is an indicator of the legislature's intent to waive sovereign immunity. So it is a very key fact here that the legislature did not authorize Montclair State University to sue and be sued, which demonstrates the legislature's intention not to waive sovereign immunity for the university. Are you saying that Montclair does have the power to bring lawsuits in its own name retaining private counsel? It can retain private counsel that's statutorily authorized, yes. As you pointed out, Your Honor, it certainly has sued. It's not statutorily authorized to sue and be sued. I don't know that that issue has been addressed in the courts or fleshed out. So in practice it has done so. However, I think the important fact for our analysis is that the legislature has not authorized it to sue and be sued. And both federal law and New Jersey state law indicates that that is a key factor. So I see now my time is up. We'll get you back on rebuttal then. Thank you. Mr. Tichara. Good morning. My name is Michael Tichara. I represent the plaintiff, Paula Maliandi, in this case. Again, I just want to address, you know, the court is very aware of the three factors that are needed, that MSU needs to bear the burden of persuasion to establish the three factors that it's immune from pursuing to the 11th Amendment. And I would suggest that... They don't have to establish all three factors. I mean, they have to. It's a balance. Correct, Your Honor. It's very fact intensive. You're right, Judge. And with the, you know, whether or not the state would be obligated to pay any judgment against the university, I think is the predominant factor, particularly if it's a close call. And I would suggest here that based on the first factor, whether a judgment would have to be paid by the state, it clearly weighs against granting MSU immunity. Let's assume you're right. Let's go to status. Sure. What are the considerations weighing in Ms. Maliandi's favor? Okay. I'll just run through a bunch of things on the other side. Maybe you can help me. It was established to pursuant to state authority. Correct. The state appellate court has held that it is a state agency in Batcay, although that's the New Jersey appellate division. New Jersey has expressly given Montclair the ability to sue or be sued. The university shares other state agency exemptions from state tax. I don't believe it's separately incorporated, is it? It is not, Your Honor, but it does have the ability to adopt a corporate seal, and it's considered part of the state for purposes of the New Jersey Contractual Liability Act. Is that correct? Correct. And its decisions on tenure and certain personnel disputes are subject to the state APA, Administrative Procedure Act? Only for certain positions, Judge. People like the president, deans, are not subject to that provision. It does have eminent domain authority, does it not? It does. And its non-faculty employees are subject to New Jersey civil service laws? Correct. And I could go on. So what counteracts, what balances against that, at least on the second-pronged status under state law? How is it treated? Sure. I would address it this way, Judge. The Tort Claims Act applies both to municipalities and counties, as well as on to the state. Counties and towns in New Jersey have the power of eminent domain. The university has the ability to enter into contracts on behalf of itself. It also has the ability to enter into contracts with the state, again suggesting that there's a separation between MSU and the state. I apologize. When I refer to MSU, I'm referring to Montclair State. Again, it statutorily has the ability to enter into contracts with the state. If it wasn't a separate entity, I think that language in the statute would be superfluous. Again, it can adopt and use a corporate seal. It can choose a president and determine the amount of compensation for the president. It can appoint a treasurer and deans. It can borrow money on its own. It does not become a debt or a liability of the state. In the one case that Bowers would accord, it did seem to find that the University of Iowa, at least, was an arm of the state. Again, MSU was not created by constitution like the University of Iowa was. All funds for the University of Iowa are controlled by the state. That's not the case here for Montclair State. Unlike the University of Iowa, Montclair State has the ability to choose whether it's going to be represented by the Attorney General or not. Also, different from Iowa, New Jersey does not have a separate state towards Claims Act. The Towards Claims Act in New Jersey applies to municipalities and counties as well. So I would distinguish Bowers in that sense. The ability to choose to be represented by someone other than the Attorney General, on the face of the Towards Claims Act, it appears that that choice is provided only in the context of toward claims under that statute. Otherwise, there's not statutory provision for the entity to select its own counsel or to sue or be sued in other contexts outside of state representation. Is there some other statute or some authority that you have in mind to suggest more broadly it can choose its own counsel? Yes, Judge, I'm referring to 18A3B6, which is the powers and duties of the governing boards. H specifically says to retain legal counsel of the institution's choosing. That's plainly in the language. It does go on to say that it may choose representation by the Attorney General, but only as to claims of a tortious nature. So, again, it suggests that it does have the ability to choose its own counsel if it so chooses. Do you agree that the college is subject to the strictures of the Contractual Liability Act? I do, Judge, but, again, that's one factor to be considered whether or not it's an arm of the state. Certainly, there are cases here where, as far as whether it would be the status under state law, again, it's less clear that it's separated from the state as Montclair State is here. But even considering that one factor, I would suggest that the college, again, is a separate entity from the state. But the Contractual Liability Act only applies to state entities, right? Again, as I said, it's a factor to be considered. Yes, Judge, you're right. If the university here is able to prevail with regard to 11th Amendment immunity, what options do you have with regard to the discrimination claim? I suppose the plaintiff here could pursue them under state law. And, again, if that would not be an option… Would they claim immunity under state law, too? You know, it's not clear. They only moved to dismiss on the federal claim here, Judge, the FMLA claim. They said that the argument was that if it's granted sovereign immunity, then the court shouldn't exercise jurisdiction, insular jurisdiction, over the state law claim. It's not clear that Montclair State would be asking to find it immune from suit under the New Jersey law against discrimination as well. Are there other mechanisms within the college that is under the Administrative Procedures Act or through collective bargaining agreements that would provide another avenue for relief? I don't believe so. In her position, she does not have that opportunity. I suppose ultimately she could name individuals in their official capacity as a potential option for her. Is the time period to file under state law? Has that passed? That's a good question, Judge. I don't believe so. I do believe if this decision were to be reversed, I think she would have 30 days to file a state claim. So I'm assuming, without knowing for certain, that her at least statute of limitations would be stayed pending that 30-day window. Okay. If we were to reverse and determine that it's an arm of the state, should we reach the question of abrogation? And if so, is there any way that you would have us distinguish Coleman v. Court of Appeals of Maryland? Abrogation in what sense, Judge? Abrogation in that we would have to address the question whether Congress has expressed the abrogation immunity with regard to the self-care provision of the FMLA. I guess I would answer it this way, Judge. I think in this particular case you have a number of New Jersey statutes that clearly grant, at least from our perspective, Montclair State autonomy, that clearly indicate that it's a separate unit from the state. I don't even think you need to address the other cases. This is a very fact-specific scenario. In those other cases that were cited by the state here or by Montclair State, again, they do not have the state statutes that are present here in New Jersey that grant the autonomy that is granted to Montclair State. So I would answer it and respond in that way, Judge. No further questions? Okay. Thank you very much. Ms. McGrover. The higher education amendments in 1986 and 1994 have not changed the fundamental relationship between the state and the university. In fact, prior to the 1994 Act, the Board of Higher Education appointed the Board of Trustees, and now the governor makes those appointments directly. The governor makes the appointments, but once they're appointed, they can only be removed by the governor with costs. Is that correct? That's right. And so that's like – oh, pardon me. Go ahead. I was going to say that's the same situation as I mentioned in the University of Iowa. And here – But the point that your opposing counsel mentions is that it was state funding. Everything was controlled by the state of Iowa. Right. There's a recent decision out of the Sixth Circuit that I think is very helpful on that analysis. It issued in December after we had all filed our papers. It's Krepke v. Wayne State University, 807 F. 3rd 768, the Sixth Circuit, December 2015. And it does a very nice job of – Wayne State University there was held to be entitled to sovereign immunity despite the lack of state control because that court recognized the importance of letting a higher education institute operate as it saw fit in order to flourish and have an outstanding academic and educational programs and be competitive. And that's the same situation here. I think we also have other indicators of autonomy, the lack of autonomy. In fact, Montclair State University is less autonomous than New Jersey Transit or SEPTA, which the Third Circuit held both of those. The autonomy factor favored immunity. In what way? In the Fitchick v. New Jersey Transit rail operations, the court recognized that the governor appointed a minority of the board, three of seven, yet he had a constrained veto power. So NJ Transit sent their minutes to the governor, and if he didn't veto them, they became law. The governor does not have veto power here. That's right, and he doesn't need it because he appoints the entire board. And in Fitchick, ultimately, the court ruled in favor of non-immunity, right? Right, because in that case, the funding factor predominated, and it outweighed both of the other factors. What do we make of the fact that throughout the relevant statutes, there's the stated purpose by legislature is to increase autonomy and independent decision-making by state colleges? Right, that purpose is stated, and immediately following that purpose is stated the increased accountability to the state. So now these institutions, these universities are held accountable to the state rather than the Department of Higher Education being accountable for achieving state goals. The colleges themselves are accountable to the state for achieving those goals. And so the state can audit its books at any time. The universities have to report annually to the legislature and governor. I note that in Iowa, it was biannually, so every two years. The state university works directly with the state treasurer's office in developing its budget, has to report any departures from the budget to the state treasurer's office. These are all indicators of state control and state involvement, despite the lack of the state. State involvement is not sufficient for our purposes, though, right? I mean, it's not enough for it to be an entity affiliated with the state. We need to conclude that the state is actually the party in interest here. It's an alter ego of the state. That's right, and we meet that challenge because these state cases, BAT-K, I think Bruce and partnership, councils in favor, they recognize that these state colleges, Montclair State University is a state agency. For some claims. Are you asking us to set up what would be quite an anomalous situation where someone bringing a 1983 claim could proceed in state court because the entity, dealing with a discrimination claim, for example, because the entity is deemed a person for discrimination claims, but couldn't bring that same claim in federal court because of 11th Amendment immunity? I don't think, if you're referring back to future, I think that addressed UMDNJ, which had more autonomy than Montclair State University. And so I think Montclair State University, if it's immune under federal law, it's immune from federal claims in state courts as well. Could you discuss a bit what you see as the practical consequences of holding that the college is not an arm of the state? And particularly thinking about our decision in COVATS, it doesn't appear that that opened the floodgates for suits against Rutgers or you had a significant effect on the state's treasury as a result. Do you see the number or types of suits differently here? If we were to conclude that the 11th Amendment did not apply? I think the practical effect is to respect the dignity of the state to structure itself as it sees fit. I don't know that it would have an effect on the number of claims that are brought. I think state court would provide a forum for claims that claimants would have. And how about the abrogation question that I asked to your colleague? That is, if we conclude that the 11th Amendment does apply, do we need to remand for the district court to address abrogation in the first instance? Or is that something that we can address given the Supreme Court's decision in Coleman? Yes, I think it's been addressed. It's been decided by the Supreme Court. So I don't think a remand on that issue is necessary. The Congress has not abrogated immunity under Title I of the ADA, which is the title at issue here. Thank you very much. Thank you, both counsel, for helpful arguments.